## THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
## NEW HAVEN DIVISION

**TORREY TERRIAL TOWNSEND,**

       **Plaintiff,**

v.                              **CASE NO. 3:18 CV1684 (VLB)**

**FIRST STUDENT AND CSEA**     :
**SEIU LOCAL 2001,**

       **Defendants.**       :

### REVISED COMPLAINT

Plaintiff, Torrey Terrial Townsend, an African-American woman, complains of

Defendants, First Student, and CSEA SEIU Local 2001 as follows:

NATURE OF THE CASE

1.  A. This is an employment discrimination case, brought pursuant to the provisions

of the Civil Rights Act of 1866, 42 U.S.C.§ 1981, as amended by the Civil Rights Act of

1991 ("Section 1981"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § § 2000e, et

seq., as amended ("Title VII"); the Fifth Amendment to the United States Constitution,

as amended ("Am. V');  the Equal Protection Clause under the Fourteenth Amendment

to the United States Constitution, as amended; Connecticut Labor Department, C.G.S.

§ 31-51m (5)and (6), as amended ("CLD"); C.G.S. § 31-51q;  and the City of New Haven

Code of Ordinances, Chapter 12 ½ (:Code of Ordinances"); Code of Federal Regulations,

CFR 396.11, as amended ("CFR"); and C.G.S.§ 14-275c-41 (" DVIR").   Plaintiff alleges

that the Defendant, First Student, intentionally engaged in employment discrimination on

the basis of race and color against the Plaintiff as alleged in this Complaint. Defendant First Student's discriminatory practices include, but are not limited to, job training; job assignment, denial of license upgrade and compensation. Plaintiff seeks equitable monetary relief from these practices; compensatory and punitive damages; reinstatement and restitution of all back pay; and an award of costs, expenses and attorney's fees for herself.

B. This is an employment discrimination case, brought pursuant provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the Fifth Amendment to the Constitution of the United States, as amended ("Am.V") the Equal Protection Clause under the Fourteenth Amendment to the United States Constitution, as amended ("Am. XIV"); the Connecticut Labor Relations Act, C.G.S. § 31-101, et seq.("CLRA").The Plaintiff alleges that the Defendant CSEA SEIU Local 2001 ("CSEA") intentionally engaged in a discriminatory practices in its representation of Plaintiff, on the basis of race and color, as alleged in this Complaint. Defendant, CSEA's discriminatory practices include, but are not limited to, failure to train plaintiff, failure or refusal to represent Plaintiff's interests in her termination hearing. Plaintiff seeks equitable monetary relief from these practices, compensatory and punitive damages; and van award of costs, expenses and attorney's fees for herself.

JURISDICTION AND VENUE

2.   Jurisdiction. This Court has original jurisdiction of Plaintiff's 1981 claim pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4). The Court has original jurisdiction of Plaintiff's

2

Title VII claims pursuant to the aforesaid provisions, as well as through 42 U.S.C. §

2000e-5(f)(3). This Court has supplemental jurisdiction of the Plaintiff's Connecticut

Constitutional claims and her CLRA claim pursuant to 28 U.S.C. § 1367, as amended.

3.   Venue.  Venue is proper in this District pursuant to 42 U.S.C. § 1391 (c) and 42

U.S.C.  § 2000e-5(f)(3). Defendants, and each of them are subject to personal jurisdiction

in this District in that each of them maintains offices and business operations in this

District, employs or employed Plaintiff in this District, and committed some or all the

discriminatory acts alleged herein in this District.

## PARTIES

4.   The Plaintiff herein is a former employee of the Defendant, First Student and is

currently a member of the Defendant, CSEA.

5.   Plaintiff Torrey Terrial Townsend is a dark- skinned African-American female and

a resident and citizen of Connecticut Ms. Townsend worked for First Student as a school

bus driver from September 24, 2012 until her termination on October 26, 2017.  Plaintiff

filed a Charge of Discrimination against Defendant First Student with the United States

Equal Employment Opportunity Commission ("EEOC"). On or about May 15, 2019, the

EEOC issued her  Notice of Right to Sue on the Charge against First Student.. A copy of

said Notice  is attached to this Complaint  as Exhibit 1A.

6.  The Plaintiff was, and is, at all times herein, a member in good standing of the

Defendant CSEA. She filed a Charge of Discrimination with the United States Equal

Opportunity Commission (:EEOC"). On May 17, 2019, the EEOC issued her a Notice of

3

Right to Sue on that Charge. A copy of said Notice is attached to this Complaint as Exhibit 1B.

Defendant No. 1:   First Student, LLC:

7.  Defendant First Student is a Connecticut limited liability company which multiple transportation contracts and hires commercial motor vehicle drivers with "P" and "S" endorsements.

8.  These contacts are under the control of a Senior Location Manager whose duties include, but not limited to, enforcing all state and federal regulations, hiring and firing of commercial drivers, with a "P" endorsement who drive school buses.

9.  Mr. Paul A. DeMaio, Jr., (herein after, "DeMaio")  is, from late 2015 to the present, Senior Location Manager for First Student in New Haven, Connecticut and as such, is, at all times relevant herein, acting as administrative agent for First Student.

10.  In addition to the above cited duties, Mr. DeMaio is charged with the responsibility to implement the terms of the contract First Student has with the City of New Haven to provide and coordinate transportation to students.

11. In doing so, he must follow all federal statutes and codes and the City of New Haven Code of Ordinances, Chapter 12 ½ governing the proper execution of said contract.

### FACTS RELATING TO THE INTENTIONAL DISCIMINATIOIN BY DEFENDANT FIRST STUDENT

12.  Defendant First Student's employment practices discriminate against the Plaintiff As dark-skinned  African American Female. The discriminatory practices by the

4

Defendant First Student are intentional and adversely affected Plaintiff's by failing to properly train her in the requirements of her job, assigning of school bus routes, denial of Plaintiffs requests for transfer to the morning shift, denial of Plaintiff's request to upgrade her CDL license by obtaining an Air Brake Endorsement, reduced income and Plaintiff's unjustified termination by Mr. DeMaio, as specifically summarized below.

13.   Plaintiff was hired by First Student on September 24, 2012 as a school bus driver.

14.   Plaintiff went to school to obtain her Commercial Driver's License ("CDL") which she obtained on March 18, 2013.

15.   Plaintiff was initially assigned school bus routes for both the mornings and afternoons. This schedule led to the creation of an emotional strain upon her, because of harassment by several supervisors and staff.

16.   Plaintiff made her first request to Mr. DeMaio on or about February 21, 2016, before her CDL proficiency exam expired on March 22, 2016 and was renewed, to be trained on air brakes and obtain an endorsement therefor for her CDL. DeMaio denied her request.

17.   Such an endorsement would create increased future economic opportunities for the Plaintiff as a CDL driver.

18.   Mr. DeMaio denied Plaintiff's request for air brake training on the aforesaid date.

19.   On August 4, 2017, Plaintiff filed two (2) grievances with First Student for air brake training and a change of driving schedule to mornings only.

20.   On August 21, 2017, a meeting was held with the Plaintiff, Mr. DeMaio, CSEA union representative Adrean Enrique Rodriguez at which time Plaintiff's request for mornings only was denied..

21.  Defendant First Student provides air brake training to other contract drivers-almost exclusively White and Hispanic males.

22.  On April 28, 2018 Plaintiff had to enroll in a Tractor Trailer Driver school in Stamford, Connecticut in order to obtain her Air Brake endorsement.

23.  The Plaintiff had to take out $10, 700.00 in federal loans in order to complete the school and obtain her endorsement.

24.  Plaintiff was without the funds needed to take the test necessary to complete the tractor trailer program.

25.  As a result, Plaintiff has not been able to obtain employment as a truck driver, because she is not fully licensed with Air Brakes.

26.   Pursuant to G.G.S. § 14-275c -41, the Plaintiff is required to perform a daily Pre-Trip Inspection on her assigned bus.

27.  Such an inspection includes checking the service brake, parking brake, steering mechanism, lighting device, reflectors,  horn, emergency buzzer,  windshield wipers, mirrors, tires and rims, and emergency equipment.

28. During Plaintiff's employment with Defendant First Student, she was harassed at various times by the Defendant to perform extra pre-trip duties, in contravention of C.G.S. § 14-275c.41. Those duties included checking leaf springs, Pittman Arm and drag links, as well as checking the inner tire area as to brake drums and brake pads.
 brake system Plaintiff responded by telling the Defendant that she was not trained to do these checks, because she is not a diesel mechanic and was not trained to be one.

29. Plaintiff told First Student by telling Defendant that she was not trained to do these

checks, because she was not a diesel mechanic and was unable to identify any defects

30. First Student does not possess a license to train or certify any of its drivers to become a diesel mechanic.

31. The Plaintiff is required to keep the Driver's Vehicle Inspection Report ("DVIR") on her bus at all times pursuant to C.G.S. § 14-275c-41 in order to allow a Department of Transportation inspector (or other designated official) to review said DVIR records. The statute provides in pertinent part: "All … (DVIRs) shall remain and be kept on file by the carrier for six (6) months. They shall be made available for inspection at any time by any driver of the carrier. A copy of the DVIR from the previous days operation for each vehicle shall be carried in such vehicle," and signed by the driver and mechanic.

31. Code of Federal Regulations, 49 CFR 396.11 ("49 CFR") likewise requires the DVIR, signed by the driver, from the previous day's operation to be carried on each bus which the driver must sign each day.

32. Plaintiff informed Mr. DeMaio on several occasions of this requirement. Each time she was told that DVIR was only used in emergencies

33. Plaintiff was "trained" on ZONAR, but not on DVIR which is required by state and federal regulations.

34. ZONAR is a hand-held wand type device which, at all times relevant herein, is used by First Student for both pre-tripping their buses and as a monitor to monitor the bus route of each bus it employs for transporting children.

35. The ZONAR device does not provide for (1) a written record of each pre-trip

7

inspection; (2) It allows for unfettered discretion by First Student to delete any inspection record from the system; (3) does not require the driver's signature on the inspection report; and (4) is not kept on the bus.

36. The use of ZONAR by First Student is in direct contravention of the DVIR requirement under C.G.S. § 14-275c-41 and CFR.

37. The Plaintiff brought the fact of statutory violation in using ZONAR, instead of DVIR to the attention of Mr. DeMaio, who insisted that ZONAR's use was proper and in compliance.

38. The Plaintiff requested bus monitor on or about November 5, 2013 due to unruly children as provided for on page 21 in Defendant's school bus contract with the City of New Haven.

39. First Student denied her request for a bus monitor on or about November 26 , 2013.

40. Plaintiff was suspended and not allowed back to work until December

41. First Student failed to report injuries to children on Plaintiff's bus to the New Haven Board of Education ("NHBOE"), on at least one occasion, as required by its contract with the NHBOE, as well as reports of inappropriate sexual conduct by students toward bus monitors and other students

42. First Student deleted reports made by Plaintiff through ZONAR for requested repairs for Plaintiff's bus, as well as the reported repairs made thereto.

43. As a result, First Student placed additional tasks upon Plaintiff as part of her daily pre-trip.

8

44. These "additional tasks" included, but were not limited to, counting the number of screws in the interior ceiling of the bus; and driving "downed" (inoperable) buses with children on them, thereby creating an unsafe situation for herself and her young charges, and requiring her to perform the above-stated inspections that she was not trained to do and were properly the province of First Student's diesel mechanics.

45. No other driver was required to perform these "additional tasks."

46. The purpose behind First Student's actions in this regard was to place Plaintiff in an increasingly unsafe stressful situation on a daily basis.

47. On or about May 25, 2017, after Plaintiff had made a complaint to Defendant about the condition of her bus, Plaintiff having found a dead rat lying on the steps into her bus when she unlocked it to perform her pre-trip duties.

48. On October 25, 2017, plaintiff's assigned morning pickup route was in East Haven, Connecticut and the drop-off route was in New Haven. The drop-off route consisted of three schools: (1) West Rock STREAM Academy ( no students were dropped off there)); (2) Mauro-Sheridan Inter District Magnet School (2 to 3 students dropped off on said date); and (3) Davis Street Magnet School (2 students dropped off).

49. Plaintiff arrived at the First Student bus parking lot at via Defendant's shuttle on October 25, 2017 at 6:25 am and clocked in at 6:30 am.

50. Plaintiff went to her assigned bus (#979) at 6:38 am.

51. Plaintiff unlocked the bus and began her pre-trip inspection shortly thereafter.

9

52.  Plaintiff sat in her driver's seat at 6:45 am in order to perform the brake test which is the first part of the pre-trip inspection.

53.  The seat had a puddle of water in it, even though all the bus windows were closed the night before. As a result, Plaintiff's pant seat and leg became soaking wet.

54.  Plaintiff called the base dispatch office and spoke to First Student Morning Supervisor "Felix" (an Hispanic male and told him the wet driver's seat was most likely an intentional act.

55.  Supervisor Felix gave Plaintiff permission to go home with her bus and change her pants and then start her morning run.

56. Plaintiff left the bus yard at approximately 6:57 am and arrived at her home at approximately 7:09 am. There were no children on the bus at that time.

57.  When Plaintiff arrived home, she saw a police car in the substation parking lot behind her home.

58.   Plaintiff made a police report with Officer Dash concerning the wet seat claiming it was done to harass and intimidate her.

59.  Plaintiff completed her pre-trip inspection, using a DVIR Inspection sheet, as required by C.G.S. §§ 14-275c-41 and 276a-4.

60.  Plaintiff arrived at the Mauro-Sheridan Inter District School at 9:35 am. There was a First Student bus parked in front of her..

61.  That driver, an Hispanic male, was waiting for school staff to come out to receive the children on his bus, prior to Plaintiff's arrival, as required by the school bus contract.

62. Plaintiff called First Student's base dispatch at 9:42 am to inform them of the

10

problem stating there were two buses waiting to drop off children and requested a call be made to the school staff to come outside and receive the children from both buses.

63.  Plaintiff received no response from base as to what to do while waiting to drop off her children.

64.  Plaintiff the called the school itself at 9:43 and 9:45 am and left messages to alert them to the need to come outside for the children.

65.  No one from the school contacted Plaintiff or came outside.

66.  Plaintiff next called the New Haven Board of Education to alert it to the problem. She spoke to an Hispanic  woman who said if the school is not picking up, "what do you want me to do, because the school won't pick up for me either."

67.  The unidentified woman told the Plaintiff to " just beep her horn and someone from the school will come outside."

68.  Finally, at approximately 9:50 am, a parent went inside the school and was able to get the staff to come out and receive the children from both buses.

69. Pursuant to the bus contract, each driver's route has specific time periods between each of his or her scheduled drop offs.

70.  Bus drivers have a ten (10) minute grace period  both before and after  the scheduled pickup and drop-off times.

71. Due to the unnecessary delay in the drop off at the Mauro-Sheridan School, which lasted  ten (10) minutes, over and above her grace period,  Plaintiff was late to her third school drop off at the Davis Street Magnet School.

72. All school drop-offs must occur at 9:25 am, pursuant to New Haven Board of Education  policy.

11

73. The Davis Street Magnet School made no complaint to either First Student or the New Haven Board of Education concerning Plaintiff's tardiness.

74. Plaintiff completed her bus run at approximately 12:45 pm., at which time dispatch called her and requested that she return to base, because management needed her bus.

75. Plaintiff requested time to go home so she could use the bathroom and complete her run paperwork prior to bringing back the bus.

76. Supervisor Felix gave Plaintiff permission to do so; just to come back to base before starting her afternoon bus run.

77. First Student had given Plaintiff permission to park her bus in the large parking lot behind her home whenever she had to go home during her runs. Plaintiff had been doing this since her hire in 2013.

78. Plaintiff returned to the bus yard and went to the maintenance garage to have her bus serviced.

79. While waiting for service, Defendant's Location Manager, DeMaio, came on to her bus and pulled the bus video tape. He then told Plaintiff to leave and do her afternoon run,

80. Plaintiff complied and completed her afternoon bus run.

81. On October 26, 2017, Plaintiff arrived at work by shuttle and clocked in. She completed her morning bus run at approximately 12:45 pm.

82. As usual, Plaintiff drove her bus home and parked it behind her home to await the start of her afternoon run which was to begin at 1:30 pm.

83. At approximately 1:25 pm, Plaintiff went outside to unlock her bus and her bus was gone.

12

84. In a panic, Plaintiff called First Student Location Manager DeMaio to report

the bus possibly being stolen.

85. Plaintiff asked DeMaio what had happened to the bus. DeMaio told Plaintiff that he

had had someone come get the bus. He also told her that someone would come pick her

up and bring her to First Student for a meeting. In addition, Plaintiff was told that she

would need her union steward to be at the meeting.

86. Plaintiff inquired as to the purpose of the meeting, but was not given a response.

87.  Plaintiff attended the October 26, 2017 meeting with DeMaio and Plaintiff's

union staff representative, Adrean Enrique Rodriguez.

88.  DeMaio told Plaintiff that she was being placed on administrative leave while

certain actions on her part were being investigated, including failure to perform a pre-trip

via ZONAR on her bus. In her defense, Plaintiff attempted to explain the sequence of

events that occurred during her run on October 25, 2017.

89. She was not allowed to know what the other actions were, but that a complaint was

made  by the City of New Haven Board of Education, in which it was alleged Plaintiff

was blowing her bus horn.

90.. Plaintiff was informed that she would have the opportunity to respond to DeMaio's

investigation results through her union representative, as provided for in her union

contract.

91. On or about October 27, 2017, Plaintiff sent an email to her union representative,

Adrean Enrique Rodriguez, requesting a formal arbitration hearing to allow her to

respond to DeMaio's allegations, once she was informed what those were.

92. Plaintiff subsequently sent emails to DeMaio and her union representative concerning the time and place of her requested Arbitration hearing.

93.  In November, 2017, Plaintiff was informed by her union representative that a meeting was held by the union panel concerning DeMaio's investigation, and that he would email her as to the date and time of Phase II of the arbitration procedure.

94. In November, 2017, the Phase II meeting was held between DeMaio and the union representative, without Plaintiff's knowledge as to either date or time.

95. Plaintiff was not allowed to attend said meeting or provide a written response.

96. Plaintiff was never personally informed of the results of the Phase II meeting, which concurred with DeMaio's and First Student's decision.

97. On November 17, 2017, DeMaio sent a termination letter to Plaintiff, based upon his investigation, citing five (5) "serious" violations of First Student Policy by the Plaintiff on October 25, 2017. See copy of termination letter attached hereto as Exhibit 2.

FIRST CAUSE OF ACTION – VIOLATION OF 42 U.S.C. § 1981
(ON BEHALF OF THE AFRICANAMERICAN PLAINTIFF)

98.  Plaintiff repeats and re-alleges and incorporates by this reference the allegations set forth in Paragraphs 1 through 97, inclusive, as though fully set forth herein.

100. Defendant First Student's discrimination against the Plaintiff, Torrey Terrial Townsend, is in violation of the rights of the Plaintiff afforded her by the Civil Rights Act 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

101. By the conduct described above, Defendant First Student intentionally deprived

14

the African American Plaintiff of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of her contractual employment relationship with First Student, in violation of 42 U.S.C. § 1981.

102. As a result of Defendant First Student's discrimination of 42 U.S.C. § 1981, the African American Plaintiff has been denied continued employment providing substantial compensation benefits, thereby entitling her to equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of First Student's actions, thereby entitling her to compensatory damages.

102. In its discriminatory actions as alleged above, First Student has acted with malice or reckless indifference to the rights of the African American Plaintiff, thereby entitling her to punitive damages.

103. To remedy the violations of the rights of the Plaintiff secured by 42 U.S.C. § 1981, Plaintiff requests that this Court award her the relief prayed for hereinbelow.

### SECOND CAUSE OF ACTION – VIOLATION OF TITLE VII
### (ON BEHALF OF THE AFRICAN AMERICAN PLAINTIFF)

104. Plaintiff repeats, re-alleges and incorporates by this reference, the allegations set forth in Paragraphs 1 through 103, inclusive, as though fully set forth herein.

105. Defendant First Student's discrimination against the African American Plaintiff is in violation of the rights secured to Plaintiff by Title VII of the Civil Rights Act of 196442 U.S.C. §§ 2000e et. seq., as amended by the Civil Rights Act of 1991.

106. By the conduct described above, Defendant intentionally violated the rights of the Plaintiff under Title VII.

15

107. Defendant's conduct also had an adverse impact against Plaintiff, and is neither job-related nor consistent with business necessity, and therefore violates the rights of the Plaintiff under Title VII.

108. As a result of the violation of the Title VII rights of the Plaintiff, the Plaintiff is entitled to equitable relief, including "make whole" remedies and equitable monetary relief, to remedy and compensate her for the effects of First Student's unlawful actions.

109. As a result of First Student's intentional violation of the Title VII rights of the Plaintiff, the Plaintiff has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life, thereby entitling her to compensatory damages.

110. In its discriminatory actions as alleged above, First Student has acted with malice or reckless indifference to the rights of the above-named African American Plaintiff, thereby entitling her to punitive damages.

111. To remedy the violations of the rights of said Plaintiff secured by Title VII, the African American Plaintiff requests that this Court award her the relief prayed for hereinbelow.

## THIRD CAUSE OF ACTION – VIOLATION OF CONNECTICUT LABOR RELATIONS ACT (ON BEHALF OF THE PLAINTIFF)

112. Plaintiff re-alleges and incorporates by reference herein the allegations contained in Paragraphs 1 through 97, inclusive, as if fully set forth herein.

113. Defendant First Student's in terminating Plaintiff's employment because of her Complaint of physical assault by a third party and grievances concerning bus operation and safety, including First Student's failure to follow both state and federal regulations

16

to proper daily pre-trip recording, is in violation of the rights secured to Plaintiff pursuant

to C.G.S.§ 31-51m of the Connecticut Labor Relations Act.

114. By the conduct described above, Defendant intentionally violated the rights of the

Plaintiff under the aforesaid Act.

115. First Student's conduct also had an adverse impact on the Plaintiff, and is neither

job-related nor consistent with business necessity, and therefore violates the Plaintiff's

rights under the Connecticut Labor Relations Act.

116. As a result of First Student's violation of the aforesaid Act, Plaintiff is entitled to

equitable relief, including monetary relief and  compensatory and punitive damages to

remedy and  compensate for the effects of First Student's  unlawful actions caused by its

actions.

117. To remedy the violation of the Connecticut Plaintiff's rights secured by the

Connecticut Labor Relations Act, Plaintiff requests that this Court award her the relief

prayed for hereinbelow.

FOURTH CAUSE OF ACTION – VIOLATION OF THE FIFTH AMENDMENT
DUE PROCESS CLAUSE TO THE UNITED STATES CONSTITUTION ( ON
BEHALF OF THE AFRICAN AMERICAN PLAINTIFF)

118. Plaintiff re-alleges and incorporates by reference herein the allegations contained

in Paragraphs 1 through 78, inclusive, as if fully set forth herein.

119. First Student's denial of Plaintiff's request to respond to DeMaio's allegations at

their meeting on October 25, 2020 and DeMaio's refusal to allow Plaintiff to be present

and to respond to the Defendant's complaint of alleged violations made by the New

Haven Board of Education,

16

16

120. DeMaio failed to contact Plaintiff, either by telephone or by email, to discuss and respond to the results of First Student's investigation into alleged violations prior to issuing his November 17, 2017 Letter of Termination.

121. By the conduct described above, First Student denied to Plaintiff her right to Due Process under the Fifth Amendment to the Constitution of the United States.

122. As a result of First Student's violation of Plaintiff's rights to Due Process protected under the Fifth Amendment to the United States Constitution, Plaintiff was denied the continued performance, enjoyment and all benefits and privileges of her contractual relationship with First Student, in violation of said Fifth Amendment.

123. As a result of First Student's violation of the Plaintiff's aforesaid Due Process rights, Plaintiff is entitled to equitable monetary relief, including  compensatory and punitive damages, and including attorney's fees and costs.

FIFTH CAUSE OF ACTION – VIOLATION OF THE EQUAL PROTECTION
CLAUSE IN THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF
THE UNITED STATES OF AMERICA (ON BEHALF OF THE AFRICAN
AMERICAN PLAINTIFF).

124. Plaintiff re- alleges and incorporates by reference herein the allegations contained in Paragraphs 119 through 120 of Fourth Cause of Action herein above, inclusive, as if fully set forth herein.

125. By the conduct described above, First Student denied to Plaintiff her right to The protections afforded her under Equal Protection Clause under the Fourteenth Amendment to the United States Constitution, by depriving the Plaintiff of the contract

17

termination proceeding protections and rights enjoyed by other similarly situated un ion employees of First Student.

126. As a result of First Student's violation of Plaintiff's Equal Protection rights under the United States Constitution in her termination process, Plaintiff was denied the continued performance, enjoyment and all benefits of her contractual relationship with her employer.

127. As a result of First Student's violation of Plaintiff's aforesaid Equal Protection rights, Plaintiff is entitled to equitable monetary relief, including compensatory and punitive damages, ant including reasonable attorney's fees and costs.

## SIXTH CAUSE OF ACTION – VIOLATION OF CONNECTICUT GENERAL STATUTES § 31-51Q, AS AMENDED (ON BEHALF OF THE AFRICAN AMERICAN PLAINTIFF)

128. Plaintiff re-alleges and incorporates by reference herein the allegations contained in Paragraphs 1 through 97, inclusive, as though fully set forth herein.

129. The Plaintiff's statements and emails to DeMaio concerning state and federally authorized pre-trip reporting equipment, her need for a bus monitor (per Defendant's Bus Policy) on at least one occasion, in order to insure the safety of both herself and the students in her bus, her requests for air brake training and transfer to morning driving only, constituted her exercise of her rights of free speech guaranteed by the First Amendment to the United States Constitution or Sections 3, and 14 of Article First of the Constitution of the State of Connecticut.

130. The Plaintiff was fired by the Defendant for her exercise of those rights.

18

131. The Plaintiff's exercise of her rights of free speech under either the federal or state constitutions, as indicated above, did not interfere in any substantial way with the bona fide performance of her job as bus driver.

132. The Plaintiff's aforesaid exercise of her rights likewise did not in any way impede or interfere with her working relationship with the Defendant.

133. By the conduct described above, First Student intentionally deprived the Plaintiff of the continued performance, enjoyment, and all benefits and privileges of her contractual relationship with First Student, in violation of C.G.S. § 31-51q.

134. As a result of First Student's violation of Section 31-51q, Plaintiff is entitled to equitable monetary relief, including reasonable attorney's fees and costs.

135. In its discriminatory firing of the Plaintiff as alleged above, First Student has acted with malice or reckless indifference to the right of the Plaintiff, thereby entitling her to an award of punitive damages, as provided by said Statute.

Defendant No. 2:   CSEA SEIU Local 2001:

136. The Defendant, CSEA SEIU Local 2001's (hereinafter, "union") headquarters are located at 760 Capitol Avenue, Harford, Connecticut 06106-1206.

137. The Union has collective bargaining agreements with various municipalities and other public and private entities throughout the State of Connecticut.

138. At all times relevant herein, there existed a collective bargaining agreement (hereinafter, "CBA"), between the Union and First Student, covering First Student's bus drivers.

19

139. Adrean Enrique Rodriguez is the union representative for its CBA with First Student and was, at all times relevant herein, acting as the authorized representative of CSEA.

140. The provisions of the CBA are subject to the subsection (b) "Make and Enforce Contracts" provisions of Section 1981.

141. On August 4, 2017, Plaintiff presented First Student Location Contract Manager Devita Starkey two (2) grievances: one requesting that she be given training to allow her to obtain her Air Brake Endorsement in order to upgrade her, and thereby increase her employment opportunities; and the other, a request to change her driving schedule to mornings only.

142. DeMaio and Union Representative Rodriguez met to discuss with Plaintiff concerning the Plaintiff's grievances on August 21, 2017.

143. Plaintiff's request for air brake training which was given to white and Hispanic males on a regular basis, was denied by DeMaio.

144.  Rodriguez failed to argue on behalf of the Plaintiff, despite the fact that the union is obligated to ensure its members get the necessary training, including air brakes.

145. Plaintiff's request for a schedule change to mornings only was likewise denied. Plaintiff had pointed out that nearly all mornings only drivers were almost exclusively either males or Hispanics. In response, Plaintiff was told those spots were "grandfathered" in under the current contract.

146. Plaintiff emailed Rodriguez on August 22, 2017 requesting him to appeal the

August 21' 2017 denials to a Step 2 under the grievance procedure contained in Article 8 of the CBA.

147. Rodriguez never responded to Plaintiff's aforesaid email requesting an appeal.

148. Rodriguez attended the meeting with Plaintiff and DeMaio on October 25, 2017.

149. Plaintiff was informed she was being placed on administrative leave pending an investigation into her excessive use of her bus horn which DeMaio alleged was based upon a complaint from the New Haven Board of Education.

150. Rodriguez made no requests or demands upon DeMaio for specifics as to why Plaintiff was being placed on administrative leave, specifically concerning the alleged Board of Education complaint.

151. Rodriguez and DeMaio met sometime in November, 2017, prior to Plaintiff's termination to discuss the results of DeMaio's investigation without Plaintiff being present to explain her actions.

152. Rodriguez never informed Plaintiff nor discussed with her the results of the investigation into her conduct, prior to Plaintiff's receipt of the Letter of Termination dated November 17, 2017 as  provided for in Article 18 of the CBA.

153. Plaintiff emailed Rodriguez on or about November 26, 2017 requesting that the union file for arbitration on her behalf regarding her termination.

154. Rodriguez failed to follow through on Plaintiff's requests for arbitration concerning her either being placed on administrative leave or being terminated, as provided for in Article 18 of the CBA.

21

155. Rodriguez failed to protect the Plaintiff's rights in the foregoing actions by DeMaio, as required in  the Non-Discrimination provision in Article 15 of the CBA.

156. Rodriguez sent Plaintiff an email on December 20, 2017 giving her four (4) dates in early January 2018 for a Step 2 meeting with First Student pursuant to Article 8 of the CBA.

157. Plaintiff sent Rodriguez an email on January 2, 2018 in which she selected January 11, 2018 for the meeting.

158. Rodriguez sent an email in response that he would notify the owner of First Student of the date Plaintiff selected for the Step 2 meeting and confirm the January 11th date.

159. Neither the union nor First Student sent Plaintiff a confirmation email as to date or time of the meeting.

160. Sometime thereafter the Step 2 meeting was held without Plaintiff's knowledge or presence. Plaintiff was not provided with a copy of either the location contract manager's written response to the grievance or the results of the meeting.

161. Plaintiff received an email dated February 23, 2018 from the union's Director of Field Services informing her that her termination case was being submitted for a Merit Review by the union, and that Rodriguez would be in contact with her in the coming weeks, presumably to discuss her positions on the causes of her termination and the process itself.

162. Plaintiff never heard from Rodriguez about his representing her in either the Merit Review or her request for arbitration..

22

163. Plaintiff was never made aware of the time and place of, or allowed to attend the

Merit Review, or any Arbitration hearing, in violation of Article 8 of the CBA.

164. Plaintiff Received an emailed letter (also via regular mail) informing her that the

Union's Merit Review panel found that her grievance regarding her termination was

without merit and that the union was withdrawing the grievance.

### SEVENTH CAUSE OF ACTION – VIOLATION OF 42 U.S.C. § 1981(B) BY CSEA SEIU LOCAL 2001 ( ON BEHALF OF THE AFRICAN AMERICAN PLAINTIFF).

165. Plaintiff repeats and re-alleges and incorporates by reference the allegations

contained in Paragraphs 137 through 164, inclusive, as though fully set forth herein

166. Defendant CSEA's discrimination against the Plaintiff, Torrey Terrial Townsend,

is in violation of the rights afforded her by the Civil Rights Act of 1866, 42 U.S,.C. §

1981(b), as amended by the Civil Rights Act of 1991.

167. By the conduct described above, Defendant CSEA intentionally deprived the

Plaintiff of the same rights as are enjoyed by white union members to the performance,

enjoyment and all benefits and privileges of her contractual employment relationship

with First Student, in violation of 42 U.S.C. § 1981(b).

168. As a result of Defendant CSEA'S discrimination under 42 U.S.C. § 1981(b), the

Plaintiff has been denied continued employment providing substantial compensation

benefits, thereby entitling her to equitable monetary relief; and has suffered anguish,

humiliation, distress, inconvenience and loss of enjoyment of life, because of CSEA'S

actions, thereby entitling her to compensatory damages.

23

169. In its discriminatory actions as alleged above, CSEA has acted with malice or reckless indifference to the rights of the Plaintiff, thereby entitling her to punitive damages.

170. To remedy the violations of the rights of the Plaintiff secured by 42 U. S. C. § 1981, the Plaintiff requests that this Court award her the damages prayed for hereinbelow.

## EIGHTH CAUSE OF ACTION – VIOLATION OF TITLE VII BY CSEA SEIU LOCAL 2001(ON BEHALF OF THE AFRICAN ANMERICAN PLAINTIFF)

171. Plaintiff repeats and re-alleges and incorporates by reference the allegations contained in Paragraphs 137 through 164, inclusive, as though fully set forth herein.

172. Defendant CSEA'S discrimination against the African American Plaintiff is in violation of the rights secured to the Plaintiff by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq., as amended by the Civil Rights Act 0f 1991

173. By the conduct described above, Defendant CSEA intentionally violated the rights of the Plaintiff under Title VII.

174. Defendant's conduct, as alleged above, also had an adverse impact against the Plaintiff, and is neither job-related nor consistent with business necessity, and therefore violates the rights of the Plaintiff under Title VII.

175. As a result of CSEA'S violation of the rights of the Plaintiff secured by Title VII, the Plaintiff is entitled to equitable relief, including "make whole" remedies and equitable monetary relief, to remedy and compensate her for the effects of CSEA'S unlawful actions.

24

176. As a result of CSEA'S intentional violation of the Plaintiff's rights secured under

Title VII, the Plaintiff has suffered anguish, humiliation, distress, inconvenience and loss

of enjoyment of life, thereby entitling her to compensatory damages.

177. In its discriminatory actions as alleged above, CSEA has acted with malice or

reckless indifference to the rights of the Plaintiff, thereby entitling her to punitive

damages.

178. To remedy the violations of the rights of the Plaintiff secured by Title VII,

Plaintiff requests that this Court award her the relief prayed for hereinbelow.

### NINTH CAUSE OF ACTION – VIOLATION OF THE FIFTH AMENDMENT RIGHT TO DUE PROCESS TO THE UNITED STATES CONSTITUTION (ON BEHALF OF THE AFRICAN AMERICA PLAINTIFF)

179.Plaintiff repeats and re-alleges and incorporates by reference the allegations

contained in Paragraphs 137 through 164, inclusive, as though fully set forth herein.

180. By the conduct described above, CSEA denied to Plaintiff her right of Due

Process under the Fifth Amendment of the United States Constitution.

181. As a result of CSEA'S violation of the Plaintiff's rights to Due Process under the

Fifth Amendment to the United State Constitution, Plaintiff was denied  the continued

performance, enjoyment and all benefits and privileges of her contractual relationship

with her employer, in violation of said Fifth Amendment.

182. As a result of CSEA'S violation of The Plaintiff's Due Process right, Plaintiff is

entitled to equitable monetary relief, including compensatory  and punitive damages, and

including attorney's fees and costs.

25

TENTH CAUSE OF ACTION – VIOLATION OF THE EQUAL PROTECTION
CLAUSE OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION
OF THE UNITED STATES OF AMERICA (ON BEHALF OF THE AFRICAN
AMERICAN PLAINTIFF)

183. Plaintiff repeats and re-alleges and incorporates by reference the allegations

contained in Paragraphs 137 through 164, inclusive, as if fully set forth herein.

184. By the conduct described above, CSEA denied to Plaintiff her the protections

afforded her under the Fourteenth Amendment to the United States Constitution, by

depriving the Plaintiff the proper contract termination representation and rights afforded

to, and enjoyed by other similarly situated union employees.

185. As a result of CSEA'S violation of the Plaintiff's Equal Protection rights under the

Fourteenth Amendment in her termination process, Plaintiff was denied the continued

performance, enjoyment and all benefits of her contractual relationship with her employer.

## PRAYER FOR RELIEF

WHEREFORE, the African American Plaintiff prays that this Court grant relief on

her First, Second and Third Causes of Action as specified below.

185. Plaintiff prays that this Court award monetary relief as follows:

a. On the First Cause of Action, order First Student to pay equitable

monetary relief, compensatory and punitive damages to Plaintiff on whose behalf

claims are asserted under 42 U.S.C. § 1981 in that Cause of Action, in an amount to be

proved at trial;

26

b.   On the Second Cause of Action, order First Student to pay equitable monetary relief, compensatory and punitive damages within the limits of 42 U.S.C. § 1981 et. seq.,  to the Plaintiff on the claims asserted under Title VII in that Cause of Action, in an amount to be proved at trial; and

c.   On the Third Cause of Action, order First Student to pay equitable and compensatory and punitive damages to the Plaintiff on claims asserted under the Connecticut Labor Relations Act in that Cause of Action, in an amount to be proved at trial.

d. On the Fourth Cause of Action, order First Student to pay equitable and compensatory and punitive damages to the Plaintiff on her claims asserted under the Due Process Clause of the Fifth Amendment to United States Constitution in that Cause of Action, in an amount to be proved at trial.

e. On the Fifth Cause of Action, order First Student to pay equitable and compensatory and punitive damages to the Plaintiff on her claims asserted under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in an amount to be proved at trial.

f.   On the Sixth Cause of Action, order First Student to pay reasonable attorney's fees and costs, compensatory and punitive damages to the Plaintiff asserted under Chapter 557 Connecticut Employment Regulation, C.G.S. § 31-51q, in an amount to be proved at trial.

27

g.   On the Seventh Cause of Action. Order CSEA to pay equitable monetary relief, compensatory and punitive damages on whose behalf claims are asserted under 42 U.S.C.§ 1981 in that Cause of Action, in an amount to be proved at trial;

h.   On the Eighth Cause of Action, order CSEA to pay equitable monetary relief, compensatory relief and punitive damages within the limits of 42 U.S.C. § 1981 et. seq., to the Plaintiff on the claims asserted under Title VII in that Cause of Action, to be proved at trial;

i.   On the Ninth Cause of Action, order CSEA to pay equitable monetary relief, and compensatory and punitive damages to the Plaintiff, on claims asserted under the Due Process Clause to the Fifth Amendment to the United States Constitution in that Cause of Action, to be proved at trial; and

j.   On the Tenth Cause of Action, order CSEA to pay equitable monetary relief, compensatory and punitive damages on claims asserted under the Equal Protection Clause of the Fourteenth Amendment in that action, to be proved at trial.

187.. Plaintiff prays that this Court award her costs, expenses and attorney's fees, payable by Defendants First Student and  CSEA SEIU, LOCAL 2001 , as follows:

a.   By determining that the African American Plaintiff is the prevailing party on the First, Second, Fourth, Fifth, Seventh, Eighth Ninth and Tenth  Causes of Action, and thereupon awarding the Plaintiff her reasonable costs, expenses and attorney's fees incurred in bringing this action., pursuant to 42 U.S.C. § 1988 and 42 U.S. C. § 2000e-5k on the aforesaid Causes  of  Actions,  C.G.S. § 31- 51m of the Connecticut Labor

28

Relations and C.G.S. § 31-51q of Chapter 557 Employment Regulation on the Sixth

Cause of Action.

188. The Plaintiff prays that this Court order First Student and CSEA SEIU, Local

2001 to pay post-judgment interest in all monetary amounts awarded in this action, as

provided by law.

189. The Plaintiff prays that this Court award such other and further relief as this Court

deems equitable and just.

Dated: March 17, 2020.


Respectfully Submitted,


Charles A.Eggert, Jr., Esq.
Charles A. Eggert, Jr., Esq., LLC
Nine Trumbull Street
New Haven, CT 06511
Tel. No: (203)772-1044
Fax No: (203)865-0869
Fed. Bar No: ct00754
Email: caelaw@optonline.net

29

# UNITED STATES DISTRICT COURT
### for the
## DISTRICT OF CONNECTICUT

TORREY TERRIAL TOWNSEND,  :

      Plaintiff,         :

v.                      :      **CASE NO. 3:18 CV1684 (VLB)**

FIRST STUDENT AND CSEA   :
SEIU LOCAL 2001,

      Defendants.     :

## CERTIFICATION OF SERVICE

I hereby certify thaton **March 17, 2020,** a copy of the Plaintiff's Revised Complaint dated March 17, 2020  was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court=s electronic filing system o\r by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court=s **CM/ECF System.**

Charles A. Eggert, Jr., Esq.
Charles A. Eggert, Jr., Esq., LLC
Nine Trumbull Street
New Haven, CT 06511
Fed Bar No: ct00754
Phone No: (203)772-1044
Fax No: (203)865-0869
Email: caelaw@optonline.net